**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT<br/>FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| HEATHER KNAUPF, *et al.* | : |
| Plaintiff, | : Civil Action No. 14-6915 (PGS) (DEA) |
| v. | : |
| UNITE HERE LOCAL 100, *et al.*, | : **MEMORANDUM OPINION & ORDER** |
| Defendants. | : |

**ARPERT, Magistrate Judge.**

This matter comes before the Court on a motion by defendant UNITE HERE Local 100 ("UHL") for a Protective Order with respect to several interrogatories and document requests served upon it by plaintiff Heather Knaupf ("Plaintiff"). Plaintiff has opposed the motion. The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons below, UHL's motion is granted in part and denied in part.

**I. Background**

UHL is a labor union affiliated with The Hotel and Restaurant Employees International Union, AFL-CIO (the "Union"). Plaintiff was hired as a part-time server at Monmouth Park Racetrack in 2004, a facility operated by defendant BAM Management, Inc. ("BAM"). BAM and UHL are parties to a collective bargaining agreement. In or about April 2012, when BAM took over the operation of Monmouth Park, Plaintiff alleges she was told

that she was required to join the Union as a condition of continued employment and was "forced to sign a union card." ECF No. 1 ¶ 21. Thereafter, $22 in Union dues was deducted from her salary each pay period. According to Plaintiff, this is the same amount paid by full-time employees who are members of the Union, despite the fact that the earnings of seasonal/part-time employees are lower than those of full-time employees.

In June 2013, Plaintiff, through her attorney, sent a letter to BAM indicating that Plaintiff wished to terminate her membership in the Union but remain employed part-time with BAM. She further advised that subsequent to termination of her membership Plaintiff wished to pay only the reduced "agency fee" or "financial core fee" required of part-time employees. Plaintiff received no response.

In September 2013, Plaintiff, through her attorney, sent two additional letters to the Union. In the first letter, Plaintiff explained that the amount that the Union caused to be deducted from workers' salaries could cause hardship for seasonal workers. In the second letter, Plaintiff reiterated her position regarding the hardship for seasonal workers, and requested information from the Union with respect to how the amount of the salary deduction is calculated and how the money received by the Union is spent. It appears that, again, Plaintiff received no response. However, in November or December 2013, the deductions from Plaintiff's paycheck ceased. ECF No. 29 at 7.

In April 2014, Plaintiff filed a grievance regarding the deductions from her paycheck, and in June 2014 Plaintiff's counsel again wrote to the Union. Thereafter, in September 2014, Plaintiff met with a Union representative in an effort to resolve her grievance. The Union representative told Plaintiff he would address Plaintiff's concerns with the Union President. In November 2014, Plaintiff, having heard nothing further from the Union, filed this putative

class action, on behalf of herself and other part-time or seasonal employees, alleging, as relevant here, that UHL breached its duty of fair representation by deducting dues that were not prorated for her part-time status and failing to address her concerns when she raised them with the Union.  She also alleges UHL and/or the Union breached its duty of fair representation by telling Plaintiff that joining the Union was a condition of her employment.

## II.  Analysis

Pursuant to Rule 26(b)(1), the scope of permissible discovery is quite broad.  Indeed, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.... For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Rule 26(b)(1).

Discovery, however, is not without its limits.  The Federal Rules also provide that a Court "must limit the frequency or extent of discovery otherwise allowed" if it concludes that: (1) the discovery sought is cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (3) the burden or expense of the proposed discovery outweighs its likely benefit.  Fed. R. Civ. P. 26(b)(2)(C).  Further, "the Court has a responsibility to protect privacy and confidentiality interests" and "has authority to fashion a set of limitations that allow as much relevant material to be discovered as possible ... while preventing unnecessary intrusions into legitimate interests that may be harmed by the discovery of material sought." *Schmulovich v. 1161 Rt. 9 LLC*, 2007 U.S. Dist. LEXIS 59705, at *3–4 (D.N.J. 2007); Fed. R. Civ. P. 26(c).

Additionally, pursuant to Federal Rule of Civil Procedure 26(c), "[t]he court may for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]"  "In the context of discovery, it is well established that a party wishing to obtain an order of protection over discovery material must demonstrate that 'good cause' exists for the order of protection." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir.1994) (citation omitted).  "Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure." *Pansy*, 23 F.3d at 786 (quoting *Publicker Indus. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984)).  Such injury must be shown with specificity; "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." *Id.*  Where confidentiality is asserted, the party seeking a protective order typically bears the burden of justifying the confidentiality "of each and every document sought to be covered[.]" *Id.* at 786–87.

UHL has objected to certain discovery requests propounded by Plaintiff and seeks a Protective Order as to those requests.  With respect to the Interrogatories served upon UHL by Plaintiff, UHL objects to the following:

A.  Interrogatory No. 16, which asks for "the name and address for the person(s) responsible for overseeing and managing the budget and payment of Union expenses for the years 2011, 2012, 2013, and 2014";

B.  Interrogatory No. 17, which asks for "the identity of the party responsible for overseeing the collection of union dues for Monmouth Park employees, including seasonal employees for the years 2011, 2012, 2013, and 2014";

4

C.  Interrogatory No. 20, which asks UHL to "explain and provide a breakdown of how the dues or payments in lieu of dues for seasonal employees were spent during the years 2011, 2012, 2013, and 2014;" and,

D.  Interrogatory No. 21, which asks for "a list of Monmouth park employees who were Union Members for the years 2011, 2012, 2013, and 2014 and those who were not Union Members."

With respect to the Document Requests served upon UHL by Plaintiff, UHL objects to the following:

A.  Document Request No. 7, which seeks "Copies of any and payroll or other documents reflecting the dues deducted from seasonal employees for the years 2011, 2012, 2013, and 2014."

B.  Document Request No. 9, which seeks "Copies of any and all budgets, expense statements, or other documents showing the expenses of the Union for the years 2011, 2012, 2013, and 2014."

C.  Document Request No. 11, which seeks "Copies of any and all minutes, summaries, notes, agenda or other documents reflecting meetings of the Board of the Union, its Executive Committee for the years 2011, 2012, 2013, and 2014."

D.  Document Request No. 12, which seeks "Copies of any checkbooks, ledgers, electronic copies of Quikbooks or other accounting software data reflecting the income, expenses, balance sheets, check register or expenditures incurred by the Union for the years 2011, 2012, 2013, and 2014."

E.  Document Request No. 14, which seeks "All documents showing the employees working at Monmouth Park during the summer season for the years 2011, 2012, 2013, and

2014, including any rosters, employee lists, organizational charts, payroll records or other documents."

F.  Document Request No. 17, which seeks "Any and all checking account or other financial statements for bank accounts or other funds or assets maintained by the Union or its related entities or affiliated companies, into which wages or deductions from BAM employees are deposited for the years 2011, 2012, 2013 and 2014."

UHL contends that these discovery requests are overbroad and, therefore, unduly burdensome, because the discovery requests at issue seeks information from 2011 through 2014, and Plaintiff only paid dues from July 2012 through November/December 2013.[1]  UHL states that it seeks to limit this discovery "to a more reasonable period of time."  ECF No. 27-1 at 7.

Also, with respect to the document requests seeking disclosure of "union meeting minutes and other documents reflecting meeting[s] along with banking, budgets, expense statements" as well as membership lists, UHL argues that these requests impermissibly "seek the disclosure of confidential and privileged information."  ECF No. 27-1 at 6.  It points to membership lists, for example, and argues that disclosure risks "the privacy and privilege of Union members."  ECF No. 27-1 at 13.

UHL further objects to discovery with respect to class claims, and asks the Court to limit Plaintiff's discovery to only her individual claims unless and until a class is certified in this action.

In response to UHL's motion, Plaintiff argues that she is seeking merely "garden variety discovery" that can "hardly be burdensome" and should be "hardly controversial."

---

[1] There appears to be a dispute as to whether Plaintiff last paid dues in November or December of 2013. The ultimate disposition of this motion would be the same in either event.

6

ECF No. 29.  In support of her position she queries "[s]houldn't a dues paying individual be entitled to know how the dues she pays are spent?" *Id.* at 8.  Plaintiff further asserts that limiting Plaintiff's discovery to her individual claims is "unnecessary." *Id.*  She baldly states that she is not engaging in a "fishing expedition" because she merely wants to know "why she and her fellow seasonal employees are paying the same amount of dues as full-time employees," "why she was told that she has to join the Union when the law is contrary," and "how the dues that had to be paid are being spent by the Union, a representative organization supposedly organized for her benefit." *Id.* at 7.  When it comes to explaining the relevance of her discovery requests, what the Court is able to glean from Plaintiff's brief is that she contends that the discovery she seeks is relevant because it will show (1) the amount of dues collected from part-time/seasonal employees versus full-time employees; (2) whether the collection of dues stopped for all part-time/seasonal employees or just Plaintiff; and (3) whether other individuals were given proper options or forced to sign union cards.

As the party seeking the Protective Order, UHL bears the burden of establishing that good cause exists for entry of such an order.  Consequently, the Court addresses each of UHL's arguments in turn:

1.  Time Period of Discovery Requests

UHL argues that the time period covered by Plaintiff's requests is overbroad because it goes beyond the time period relevant to Plaintiff's claims.  The sole count in Plaintiff's complaint is for breach of the duty of fair representation.  "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Klimek v. United Steel Workers Local 397*, No. 14-3287, 2015 WL 3757070, at *3 (3d Cir. June 17, 2015) (quoting *Vaca v.*

*Sipes*, 386 U.S. 171, 190, 87 S. Ct. 903, 17 L.Ed.2d 842 (1967)).  Plaintiff's claims are based upon allegations that UHL (1) told Plaintiff that joining the Union was a condition of her employment; (2) collected dues that were not prorated for an employee's part-time status; (3) spent such monies on expenses beyond collective bargaining that did not benefit part-time workers; and (4) failed to promptly and adequately address Plaintiff's concerns in this regard when she raised them.  All of the conduct underlying Plaintiff's claims in this action occurred in mid-2012 or later.  Indeed, according to the Complaint, BAM did not take over operations at Monmouth Park until 2012.  Plaintiff has not shown how information from 2011 would be relevant the claims or defenses in this action or reasonably calculated to lead to the discovery of such evidence.  The Court, therefore, will grant UHL's motion with respect to the objected-to discovery requests seeking information or documents prior to 2012.

2.   Confidentiality and First Amendment Privilege

UHL asserts that "union meeting minutes and other documents reflecting meeting[s] along with banking, budgets, expense statements and other proprietary information (Document Requests 7, 9, 11, 12, and 17) and membership lists [are] highly confidential and the disclosure of said information would be unduly burdensome." ECF No. 27-1 at 12.  It also asserts the information sought is "in no way relevant" to Plaintiff's claims.  *Id.*  When a party objects that a discovery request as irrelevant or unduly burdensome, that party "must show specifically how the request is burdensome, oppressive, or irrelevant." *Alexander v. Roadway Express, Inc.*, No. 08-4591, 2009 WL 793022, at *2 (E.D. Pa. 2009); *P.V. ex rel. Valentin v. Sch. Dist. of Phila.*, No. 2:11-04027, 2012 WL 676993, at *2 n.2 (E.D. Pa. Mar. 1, 2012) (refusing to entertain conclusory objections that certain discovery requests were "overbroad and unduly burdensome" without "affidavits or other evidence which reveals the

8

nature of the burden"). UHL, however, makes only bald, unsupported assertions of undue burden and irrelevancy. This is not sufficient.

UHL's arguments regarding confidentiality are similarly lacking. UHL, as the party seeking entry of the Protective Order, bears the burden of establishing confidentiality. UHL makes only generalized arguments and bald assertions of confidentiality, and it has failed to articulate the requisite "clearly defined and serious injury" that would result from the disclosure of the requested information. *Pansy*, 23 F.3d at 786. As previously noted, "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." *Id.*

UHL also asserts that a privilege under the First Amendment applies to the discovery requests seeking "membership information," specifically, Interrogatory No. 21 and Document Request No. 14, as well as those seeking "Union communications" and meeting minutes. In *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), the Supreme Court recognized that the First Amendment implicitly protects an independent right of freedom of association and characterized official demands for membership lists as placing substantial restraint on freedom of association. This First Amendment privilege has been applied by various courts in various contexts, including contexts other than membership lists, *see DeGregory v. Atty. Gen. of New Hampshire*, 383 U.S. 825, 86 S.Ct. 1148, 16 L.Ed.2d 292 (1966) (involving the right of a private individual to refuse to answer questions from state attorney general regarding the individual's affiliation with communist groups), and in litigation involving only private parties, *see Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987).

It is well established in this Circuit that "a party who asserts a privilege has the burden of proving its existence and applicability." *In re Grand Jury Investigation*, 918 F.2d 374, 385 n. 15 (3d Cir. 1990).  Furthermore, "the weight of existing authority instructs that the party claiming a First Amendment privilege in an objection to a discovery request bears the burden to make a prima facie showing of the privilege's applicability.  *In re Motor Fuel Temperature Sales Practices Litig.*, 641 F.3d 470, 488 (10th Cir. 2011) (citing *In re First Nat'l Bank, Englewood, Colo.*, 701 F.2d 115, 118 (10th Cir.1983) ("[W]hen a party makes a prima facie showing of arguable First Amendment infringement ... the burden then [shifts] to the government to make the appropriate showing of need for the material.") (quotations omitted); *Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1355 (2d Cir.1989) ("In each of the [controlling] cases the party withholding information from a court or public agency made a prima facie showing that disclosure would infringe its First Amendment rights.... [such as demonstrating] that disclosure of members' identities exposed these members to economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility.") (quotations omitted); *Perry v. Schwarzenegger*, 591 F.3d 1126, 1140 (9th Cir. 2009) ("In this circuit, a claim of First Amendment privilege is subject to a two-part framework. The party asserting the privilege must [first] demonstrate a prima facie showing of arguable first amendment infringement.")).  Thus, the party asserting the First Amendment privilege must make a prima facie showing that enforcement of the discovery request will result in consequences which objectively suggest a "chilling" impact on associational rights. *Perry*, 591 F.3d at 1140.

The First Amendment privilege at issue in this matter "generally ensures privacy in association when exposure of that association will make it less likely that association will

occur in the future, or when exposure will make it more difficult for members of an association to foster their beliefs." *In re Motor Fuel Temperature Sales Practices Litig.*, 641 F.3d at 489. These are the consequences that the First Amendment privilege seeks to avoid. *Id.* In the instant matter, UHL has failed to make the requisite prima facie showing of production of the requested material will result in these chilling effects. UHL has simply offered no facts to suggest that disclosure of the materials would chill association rights. As such, UHL has not demonstrated an entitlement to a Protective Order for the specified material.

3.  Individual Claims and Class Claims

UHL specifically objects to discovery of the names of employees working at Monmouth Park because it contends that Plaintiff should be restricted to discovery with respect to only her individual claims and not any class claims. However, both the Supreme Court and the Court of Appeals for the Third Circuit have held that the names and addresses of putative class members are discoverable. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989), *aff'g* 862 F.2d 439 (3d Cir. 1988) (plaintiffs permitted to obtain names and addresses of discharged employees from the defendant employer); s*ee also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 354 n. 20 (1978) ("We do not hold that class members' names and addresses never can be obtained under the discovery rules. There may be instances where this information could be relevant to issues that arise under Rule 23, or where a party has reason to believe that communication with some members of the class could yield information bearing on these or other issues."). The Court, therefore, denies UHL's motion to limit discovery at this juncture to only Plaintiff's individual claims.

### III.  Conclusion and Order

For the reasons set forth above, the Court grants Plaintiff's motion to the extent the specified discovery requests seek information and documents from 2011.  The motion is denied in all other respects.  The denial shall be without prejudice.  Although UHL's motion did not establish the necessary factors to support entry of a Protective Order for all of the disputed discovery requests, the Court will not rule out the possibility that UHL may be able to meet those standards with an appropriately supported motion.  Furthermore, the Court's Order should not be construed as compelling the production of the disputed material, as there is no motion to compel before the Court.  Accordingly,

IT IS on this 23rd day of November, 2015,

ORDERED that Plaintiff's motion for a Protective Order [ECF No. 27] is granted in part and denied in part; and it is further

ORDERED that the motion is granted specifically as to Interrogatories 16, 17, 20 and 21, and Document Requests 7, 9, 11, 12, 14 and 17 only to the extent these discovery requests seek information and documents prior to 2012; and it is further

ORDERED that the remaining relief sought in the motion is denied without prejudice; and it is further

ORDERED that the Court will hold a telephone conference on November 30, 2015 at 9:30 a.m.  Plaintiff is to initiate the call.


                                               s/ Douglas E. Arpert
                                             DOUGLAS E. ARPERT, U.S.M.J.